IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| VIRGINIA PADILLA, et al.,<br><br>      Plaintiffs,<br><br>vs.<br><br>FRANK WINGER, et al.,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:11CV897DAK<br><br>Judge Dale A. Kimball |

   This matter is before the court on Defendants Frank Winger, AIM Winger Corporation, AIM Winger LLC, and AIM Association's (collectively, the "Winger Defendants") Motion to Dismiss and Motion for Rule 11 Sanctions.  On April 11, 2012, the court held a hearing on the motions.  At the hearing, Plaintiffs were represented by Lee Squitieri, and Defendants were represented by Steven G. Loosle. After hearing oral argument, the court took the matter under advisement.  The court has considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

   The Complaint alleges that Brian J. Smart ("Smart") received $1.65 million of the Plaintiffs' money by means of misrepresentations.  The Complaint alleges that Smart represented to Plaintiffs that he would invest their funds in safe, secure investments that he described as the "Smart Assets Fund."   Based upon Smart's misrepresentations, Plaintiffs transferred their funds

to Smart Assets. But, contrary to his representations to Plaintiffs, Smart used funds from Plaintiffs for speculative, risky investments, to make payments to investors, and for personal purposes. Smart was operating a Ponzi scheme. Smart used an entity known as Smart Assets LLC ("Smart Assets") as the vehicle for his scheme.

Defendants AIM Winger Corporation, AIM Winger LLC, and AIM Association are business entities owned and/or controlled by Defendant Frank Winger. The Winger Defendants operate an insurance brokerage business in California. The Complaint also alleges that the Winger Defendants and their agents are investment advisers within the meaning of the Investment Advisers Act, 15 U.S.C. § 80b.

Defendant Frank Winger is the father-in-law of Smart. Beginning in about the year 2000 through January 2005, Smart was employed with the Winger Defendants as an agent for the sale of insurance and investment products. The Complaint alleges that "[i]n hiring Smart, training him, providing him with leads and clients, and allowing Smart to promote himself through the Winger Defendants, the Winger Defendants were responsible for supervising his activities and therefore knew, or in the exercise of due diligence should have known," Smart "was cheating or not providing proper investment advice to the Plaintiffs. According to the Complaint, the Winger Defendants also knew or should have known that Smart was taking control of Plaintiffs assets for his personal gain. The Complaint alleges that the Winger Defendants had actual or constructive knowledge of Smart"s improper activities, but failed to warn them or alert authorities.

The Complaint alleges that Smart was able to "win the confidence and trust" of Plaintiffs because of his association with the Winger Defendants. The Complaint further alleges that Smart

persuaded each of the Plaintiffs to transfer their funds to his "Smart Assets Fund" because it was a safe investment sold through the Winger Defendants.  The Complaint alleges that the Winger Defendants allowed Smart to use the fictitious business name "A.I.M.-Smart" in order to lead the Plaintiffs to believe that Smart"s products were offered and supported by the Winger Defendants.  Plaintiffs allege that the Winger Defendants took no action to alert authorities of Smart"s improper activities because Smart was Frank Winger's son in-law.

Plaintiffs Katherine Anne Brown and the P & K Brown Family Trust (the "Brown Plaintiffs") transferred their funds to Smart and Smart Assets between 2000 and 2005.  Plaintiff Dagmar Chaplin-Lee ("Dagmar") transferred her money to Smart and Smart Assets in November 2005 and February 2006.  Plaintiff Virginia Padilla was referred to Smart in 2004.  Her daughter, Lisa Maria Padilla, later became the trustee for Virginia Padilla's trust (hereinafter "Padilla Plaintiffs"). The Padilla Plaintiffs transferred their money to Smart and Smart Assets in 2005.

According to the Complaint, the "full extent" of Smart's Ponzi scheme "was revealed by the United States Securities and Exchange Commission in a civil enforcement action entitled *Securities and Exchange Commission v. Brian Smart, Smart Assets, LLC*, United States District Court, District of Utah, Case No. 2:09-cv-0024-DAK" (the "SEC Action").  The Complaint further alleges that the allegations made in the Complaint are based upon the public records and pleadings available in the SEC Action.  The SEC Action was filed March 11, 2009, in this court.  The Plaintiffs provided statements to the SEC which the SEC filed with the court as exhibits that same day.

## DISCUSSION

The Winger Defendants move to dismiss Plaintiffs' federal causes of action and ask the

court to decline supplemental jurisdiction over the remaining state law causes of action. Defendants have also moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.  Plaintiffs assert the following federal causes of action: (1) violation of the Investment Advisers Act; and (2) violation of the Securities Act of 1933 through the sale of unregistered securities.  Plaintiffs allege the following state law causes of action: (1) fraud; (2) breach of fiduciary duty; and (3) violation of California Business & Professions Code 17200 and 17500 and California Civil Code 3345.

## Motion to Dismiss

### A. Investment Advisers Act of 1940

Plaintiff's first cause of action alleges violations of subparagraphs 1, 2 and 4 of Section 206 of the Investment Advisers Act, 15 U.S.C. § 80b-6.  Defendants argue that (1) this cause of action is barred by the applicable statute of limitations and (2) Plaintiffs fail to state a cause of action as a matter of law given the limited private right of action available under the Act.

**1. Statute of Limitations**

The statute of limitations which applies to claims under the Investment Advisers Act is set forth in 28 U.S.C. § 1658.  This provision provides as follows:

> (a)  Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than four years after the cause of action accrues.
>
> (b)  Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47)), may be brought not later than the earlier of—
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

28 U.S.C. § 1658.

As referenced in section 1658, the term "securities laws" is defined by 15 U.S.C. § 78c(a)(47). This section defines "securities laws" to include the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq.* Section 1658 thus provides the statute of limitations applicable to Plaintiffs' fraud claims under the Investment Advisers Act in this case. *See HSU v . UBS Financial Servs., Inc.*, Case No. C 11-02076 (N.D. Cal. August 5, 2011) (fraud claim under 15 U.S.C. § 80b-6 governed by the limitations period in 28 U.S.C. § 1658(b)); *Thomas v. Metropolitan Life Insurance Company*, Case No. Civ-07-0121-F (W.D. Okla. October 16, 2008).

Section 1658(b)(1) includes a two-year limitations period "after the discovery of the facts constituting the violation." In describing this limitations period, the Supreme Court stated: "We conclude that the limitations period in section 1658(b)(1) begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discover[ed] the facts constituting the violation"—whichever comes first. *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1798 (2010).

The five-year limitations period found in section 1658(b)(2) is an absolute statute of repose. The Supreme Court has described this as "an unqualified bar on actions instituted five years after such violation." *Id.* at 1797. The five-year statute of repose may not be tolled and begins to run on the date the plaintiff purchased the security. *Anwar v. Fairfield, Ltd.*, 728 F. Supp. 2d 372, 428 (S.D.N.Y. 2010).

*(A) Section 1658(b)(2)'s Five-Year Statue of Repose*

In the present case, the five-year statute of repose in Section 1658(b)(2) elapsed before Plaintiffs brought this lawsuit. The Complaint alleges that in order to induce Plaintiffs to transfer their money to himself and Smart Assets, Smart misrepresented that he would place the money in

safe investments.  Furthermore, Plaintiffs allege in the Complaint that the Winger Defendants aided Smart's fraudulent scheme by allowing Smart to hold himself out as affiliated with them.  The alleged violation of the anti-fraud provisions of the Investment Advisers Act occurred no later than when Plaintiffs transferred their money to Smart and Smart Assets based upon fraudulent representations.  This is the day Plaintiffs allegedly purchased a security.  According to the Complaint, the Brown Plaintiffs invested their funds between 2000 and 2005, Dagmar invested with Smart in November 2005 and February 2006, and the Padilla Plaintiffs invested their money with Smart in 2005.  Thus, with respect to all of the Plaintiffs, the limitations period elapsed no later than February 2011, which is five years after the last investment by any of the Plaintiffs.  Plaintiffs, however, did not file this action until September 2011.

     Plaintiffs allege that the Complaint lays out a continuing and ongoing fraud and cover-up perpetrated by Smart, wherein he alleged to have been investing their money in different securities and issued "dividend" payments to the Plaintiffs up until August of 2008.  Plaintiffs, however, have a very limited private right of action under the Investment Advisers Act.  Their only claim is to void an investment adviser's contract.  Therefore, the case law provides that a cause of action to void the contract accrues when the contract is entered into.  *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1040-42 (2d Cir. 1992).  In *Kahn*, the court expressly rejected the argument that a continuing wrong after the contract was entered into would extend the accrual date for the statute of limitations.  *Id.*  Accordingly, Plaintiffs' claims are barred by the absolute statute of repose in section 1658(b)(2).

     *(B) Section 1658(b)(1)'s Two-Year Statute of Limitation*

     Because the claim is barred by the absolute statute of repose, the court need not determine

whether the two-year period in section 1658(b)(1) has expired.  Nonetheless, the facts alleged in the Complaint demonstrate that the claim is barred under that provision as well.  Plaintiffs allege that the "full extent" of Smart's fraudulent Ponzi scheme was revealed when the SEC filed its lawsuit against Smart.  The SEC filed its Complaint on March 11, 2009, at which time Plaintiffs were fully aware of the SEC action and assisted in the SEC's investigation by providing statements which were filed in the SEC Action on the same day the SEC filed its Complaint.

Plaintiff's assert that paragraph 41 of their Complaint demonstrates that they did not learn of the facts forming the basis of their claim until October 2010.  However, paragraph 41 states that the Winger Defendants were responsible for overseeing Smart and knew or were grossly negligent in failing to ascertain that Smart was not providing appropriate investment advice to clients and are liable for aiding and abetting a violation of the Investment Advisers Act.  Plaintiffs would have been aware of these allegations when they learned of Smart's fraud.  They stated that they already knew of Smart's alleged affiliation with Defendants at the time they invested.  When they learned of Smart's fraud, they would have been aware of any allegations that Defendants did not properly supervise him.  Plaintiffs do not state any act or fact that occurred in October 2010 that provided any basis for their claim.

Plaintiffs allegations against the Winger Defendants include their involvement in Smart's fraudulent scheme long before the SEC filed its Complaint.  Plaintiffs' theory in the Complaint is that Smart induced them to invest by promoting his affiliation with the Winger Defendants.  Plaintiffs allege that Smart induced them to invest by "lead[ing] [them] to believe that Smart's investment products were offered, supported, maintained, managed and overseen by the Winger Defendants."  Thus, when Plaintiffs assisted the SEC in asserting claims of fraud against Smart,

Plaintiffs knew of his relationship with the Winger Defendants.  Therefore, Plaintiffs knew of the facts constituting the Winger Defendants' alleged violations of the Investment Advisers Act no later than March 11, 2009, when the SEC filed its action.  Plaintiffs, however, did not file their Complaint against the Winger Defendants until September 23, 2011, more than two years later.  Therefore, even if the claim was not barred by the five-year statute of repose, it is barred by the two-year statute of limitations.

### 2. Dismissal As a Matter of Law

Finally, the Winger Defendants argue that in addition to being barred by the applicable statute of repose and statute of limitations, Plaintiffs' claim for violation of the Investment Advisers Act also fails as a matter of law because Plaintiffs' only remedy under the Investment Advisers Act is to void an investment advisers contract and Plaintiffs allege no contract with Defendants.  In *Transamerica Mortgage Advisers, Inc. v. Lewis*, 444 U.S. 11, 100 S. Ct. 242 (1979), the court recognized that the only private remedy that exists under the Investment Advisers Act is to "void an investment contract, . . . the Act infers no other private causes of action, legal or equitable." *Id.* at 250.

In light of the limited private remedy available under the Investment Advisers Act, case law rejects tort claims for aiding and abetting liability.  One court recognized that "[t]he traditional contract remedy of rescission does not include a tort remedy against other entities who are not parties to the contract." *Wellington Int'l Commerce Corp. v. Retelny*, 727 F. Supp. 843, 846 (S.D.N.Y. 1989).

Plaintiffs' Complaint alleges that Smart and Smart Assets obtained all of Plaintiffs' money through fraudulent inducements and Smart used the money in his Ponzi scheme.

Plaintiffs allege that the Winger Defendants failed to supervise and restrain Smart and thus "aided and abetted and caused violations of Section 206(2) of the Advisers Act." There are no allegations that Plaintiffs had a contract with the Winger Defendants or that the Winger Defendants received any of Plaintiffs' money.

In response to the motion to dismiss, Plaintiffs assert that there may be factual questions as to whether the Winger Defendants' course of conduct created a contract with Plaintiff and as to whether any of the money went to the Winger Defendants because some checks were sent to AIM-Smart. In *Mekhjian v. Wollin*, 782 F. Supp. 2d 881, 888 (S.D.N.Y. 1992), the court recognized that even if a party did aid and abet a violation of the Act, no recovery is available "if none of the recoverable consideration" was paid to the alleged aider and abettor. *Id.*

Plaintiffs' Complaint does not support their new assertions that there may have been a contract with the Winger Defendants or that the Winger Defendants may have received some of the money Plaintiffs invested with Smart. The Complaint alleges that they invested all of their money with Smart and that AIM-Smart was a fictitious business created by Smart to make it look like he had an affiliation with the Winger Defendants. There is no allegation that money sent to AIM-Smart was sent to the Winger Defendants rather than to Smart. Moreover, the SEC found no involvement in the scheme by the Winger Defendants. If the Winger Defendants had received any of the money, they would have been required to disgorge such funds in the SEC enforcement action. Plaintiff's Complaint alleges that Plaintiffs invested their money with Smart and alleges only that the Winger Defendants aided and abetted a violation of the Act by failing to supervise and oversee Smart's activities. The court concludes that even if the claim was not barred by the applicable statute of repose and statute of limitations, Plaintiffs' claim under the Investment

Advisers Act could only be asserted against Smart. Accordingly, the court concludes that Plaintiffs cannot state a claim for aiding and abetting a violation of the Investment Advisers Act against the Winger Defendants.

**2. Section 5 of the Securities Act of 1933**

Plaintiffs' second cause of action alleges that Smart sold them unregistered securities in violation of the Securities Act of 1933. Section 5 of the Securities Act prohibits the sale of unregistered securities. 15 U.S.C. § 77e. Section 12 of the Securities Act provides that any person who offers or sells a security in violation of section 5 "shall be liable . . . to the person purchasing such security." *Id.* §77l(a)(1). Section 13 of the Securities Act sets forth the statute of limitations for claims under the Act. Section 13 provides that claims under Section 12(a)(1) must be brought "within one year after the violation upon which it is based." 15 U.S.C. § 77m.

In this case, Plaintiffs gave their money to Smart and purchased the alleged securities no later than February 2006. Although Plaintiffs claim that there is a question of fact as to when Smart may have invested their money in other investments, the statute began to run when they invested their money with Smart. Plaintiffs purchased securities when they delivered money to Smart for investment in his Smart Assets fund and Smart's possible investment of the funds into other investments after that time is irrelevant for purposes of Plaintiffs' claim. *See Lillard v. Stockton,* 267 F. Supp. 2d 1081, 1113-15 (N.D. Okla. 2003). The one-year statute of limitations period in Section 13 of the Securities Act expired in February 2007, over four years before Plaintiffs brought this lawsuit. Accordingly, Plaintiffs' second cause of action is barred by the statute of limitations.

### 3. Section 10(b) of the Exchange Act

The Winger Defendants assert that none of the five causes of action in Plaintiffs' Complaint assert a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. Nonetheless, in paragraph 6 of the Complaint, Plaintiffs allege in cursory fashion that Defendants violated section 10(b) of the Exchange Act. The limitations period set forth in 28 U.S.C. § 1658(b) also applies to the extent the is a Section 10(b) claim in this case. That claim is barred for the same reasons set forth above.

### 4. Supplemental Jurisdiction

In addition to the federal claims, Plaintiffs' Complaint asserts state law causes of action for fraud, breach of fiduciary duty, and violation of the California Business and Professions Code. A federal court may exercise supplemental jurisdiction over state-law claims if the court has federal question jurisdiction over related federal claims. However, a district court "may decline to exercise supplemental jurisdiction over a claim" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(a) and (c).

Because the court has dismissed Plaintiffs' federal causes of action, it declines to exercise supplemental jurisdiction over the state law claims. The case has only progressed to the motion to dismiss stage. In addition, although Plaintiffs assert that this court has special knowledge of the matter because it presided over the SEC action, the issues in this case differ from that case and any court can take judicial notice of the matters in the SEC action.

### **Rule 11 Motion for Sanctions**

The Winger Defendants seek sanctions against Plaintiffs, arguing that the federal claims are obviously subject to dismissal and the Complaint has been filed for the improper purpose of

harassing the Winger Defendants. Defendants state that there is no question that the federal claims are barred by the applicable statutes of limitation, that the only private right of action under the Investment Advisers Act is for rescission of a contract and restitution, and that Plaintiffs' Complaint does not allege that they had a contract with the Winger Defendants. In addition, the Winger Defendants contend that this case represents a serial filing because these same Plaintiffs brought very similar claims against the Winger Defendants in the Central District of California and failed to respond when the Winger Defendants brought a similar motion to dismiss and the court entered an order dismissing the case. Moreover, the Winger Defendants contend that there is a long history of Plaintiff Don Logan harassing, bullying, and intimidating members of Brian Smart's family and this lawsuit is part of his campaign to harass members of Brian Smart's extended family.

Plaintiffs argue that they had a good faith basis for asserting that the claims are not barred by the statutes of limitations. Plaintiffs further argue that the prior California action was not dismissed on the merits and their failure to respond to the motion to dismiss in that action does not demonstrate any improper purpose. Also, Plaintiffs point out that they have asserted several state law causes of action which Defendants have not moved to dismiss. Rather, they have only moved to have the court decline jurisdiction over them. Finally, Plaintiffs argue that they are unaware of any law that supports Defendants argument that the court can look at a party's actions outside the courtroom to determine an improper purpose in filing a complaint.

Although the court has found Plaintiffs' federal claims to be barred by the applicable statutes of limitations, the court has not addressed the state law causes of action asserted in the Complaint. Because the court is declining to exercise supplemental jurisdiction over those

claims, the court cannot opine on whether those claims have merit. Accordingly, the court concludes that it would be improper to impose Rule 11 sanctions against Plaintiffs for filing their Complaint when the court has only looked at the merits of two of the causes of action.

## CONCLUSION

For the reasons set forth above, the Winger Defendants' Motion to Dismiss is GRANTED and their Motion for Rule 11 Sanctions is DENIED. The court declines to exercise supplemental jurisdiction over Plaintiffs' state law causes of action. Accordingly, Plaintiffs' Complaint is dismissed, each party to bear his, her, and its own costs. The Clerk of Court is directed to close the case.

DATED this 20th day of April, 2012.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge